2021 IL App (1st) 182392
No. 1-18-2392
Opinion filed March 11, 2021

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03 CR 17114 |
| MILTON JONES, | ) ) | The Honorable Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant Milton Jones appeals from the second stage dismissal of his petition for postconviction relief.

¶ 2       Defendant entered into a negotiated plea agreement, whereby he pleaded guilty to one count of aggravated battery in exchange for receiving the minimum available sentence, which was two years with the Illinois Department of Corrections (IDOC). At his sentencing, his defense counsel observed that defendant was entitled to 282 days of sentencing credit, and the

trial court accordingly found that a 283-day credit applied. However, IDOC did not subsequently apply the credit against this sentence.

¶ 3        On this appeal, defendant claims that his postconviction petition made a substantial showing that his counsel misinformed him that 283 days of presentence credit would apply against his two-year sentence and that, but for counsel's misinformation, he would not have accepted the negotiated plea offer.

¶ 4        For the reasons explained below, we cannot find any prejudice and, thus, must affirm.

¶ 5                                    BACKGROUND

¶ 6        On August 22, 2003, a grand jury indicted defendant for aggravated battery. The indictment alleged that, on July 20, 2003, defendant "struck Terrance Hunter about the body knowing Terrance Hunter to be *** a Cook County Department of Correction Officer, while engaged in the execution of his official duties."

¶ 7        When defendant subsequently pleaded guilty, the parties stipulated that the evidence would establish the following facts. On July 20, 2003, defendant was an inmate in the Cook County Jail, and Officer "Hunter was assisting in the distribution of medication when the defendant became verbally and physically abusive, and during this time, the defendant struck Correctional Officer Hunter in the chest with a closed fist."

¶ 8        On April 21, 2004, defendant was sentenced in an unrelated case (No. 01 CR 18654, hereinafter, the murder case) to 25 years for first degree murder and two consecutive 6-year terms for aggravated kidnapping, for a total of 37 years with IDOC. *People v. Jones*, 2012 IL App (1st) 103570-U, ¶ 4 ("a total of 37 years' imprisonment"). In addition, the trial court in the murder case found that defendant was entitled to "credit for time actually served in custody for a total credit of 1028 days as of the date of this order."

¶ 9            On April 28, 2004, exactly a week after the sentencing in the murder case, defendant pleaded guilty to the aggravated battery charge in the instant case. The prosecutor described the State's offer as "two years in [IDOC] consecutive to his previous convictions." The trial court advised defendant that this was a Class 2 felony with a penalty of two to five years in IDOC and a possible fine of up to $25,000, followed by a one-year mandatory supervised release term.

¶ 10            When the trial court asked if there was anything that defendant wanted to say, defendant replied: "Yes. The only reason I'm taking this sentence is because of the reason that I was sentenced for my other case, and I don't have the strength to sit here in the county and fight this case. That's the only reason." The trial court replied: "All right. I'll accept your plea, enter a finding of guilty. Judgment will be entered on that finding."

¶ 11            Pursuant to the parties' agreement, the trial court entered a sentence of 2 years with IDOC, to run consecutively to defendant's 37-year sentence in the murder case. The trial court asked defendant if he had any questions, and defendant replied that he wanted to appeal the murder case and to move for discovery and transcripts in that case. The assistant public defender (APD) stated that a private attorney had represented defendant in the murder case, and the court directed the APD to place the matter on the call for purposes of appointing the State Appellate Defender in the murder case.

¶ 12            The trial court asked defense counsel to compute defendant's credit for time served. Counsel replied that it was 283 days, and the trial court found defendant entitled to credit for "283 days Cook County Department of Corrections." Similarly, the mittimus listed defendant's two-year sentence and stated: "The Court finds that the defendant is entitled to receive credit for time actually served in custody for a total credit of 0283 days as of the date of this order."

The mittimus directed IDOC to take custody of defendant "until the above sentence is fulfilled."

¶ 13       On August 13, 2012, a different panel of this court found that, at the time of defendant's offenses in the murder case, Illinois law did not authorize consecutive sentences for his kidnapping convictions, since defendant did not inflict severe bodily injury on the kidnapping victims. *Jones*, 2012 IL App (1st) 103570-U, ¶ 14. Thus, this court modified "defendant's six year sentences for aggravated kidnapping to run concurrently with one another and concurrent with his sentence for murder," for a resulting total of 25 years with IDOC in the murder case.

¶ 14       On November 13, 2014, defendant filed a *pro se* petition in which he alleged, among other things, that he did not receive the presentence credit "which was agreed to" in the aggravated battery case and that his decision to plead guilty to aggravated battery was based on receipt of this credit and on his previously incorrect 37-year sentence in the murder case.

¶ 15       Defendant alleged that, in the aggravated battery case, the trial court imposed a two-year sentence "to be served at 50%," or one year to be served. Further, the court ordered a credit of 283 days, or more than two-thirds of the one year to be served. Defendant attached an undated printout for the aggravated battery case, No. 03 CR 17114, showing that "Credit Defendant for Time Serv" was "283 DY."

¶ 16       Defendant alleged that "[i]t was not until [he] received his new calculation sheet, as a result of his void sentence, and notified counsel, that [he] learned he was not going to receive the agreed-upon 283 days of credit because he was already receiving this credit against the sentence imposed in" the murder case.

¶ 17       Defendant alleged that, had he been correctly sentenced to 25 years in the murder case and had he known that he would not receive the 283-day sentence credit imposed by the trial

4

court, he would not have pleaded guilty because he was actually innocent of the aggravated battery charge. In relief, defendant sought either a trial or enforcement of the terms of his plea agreement.

¶ 18       The petition was accompanied by a verification affidavit in which defendant averred that the facts stated in his petition were true to the best of his knowledge. In a separate affidavit, he averred that the trial court did not inform him that he would not receive the promised 283 days of credit because it would be counted "against a sentence on a separate offense." Defendant also averred that, had he "known that [his] 2 year sentence was not going to be time served in the [aggravated] battery case, [he] would not have pleaded guilty *** because [he was] innocent."

¶ 19       Defendant's *pro se* petition advanced to the second stage, where counsel was appointed. His counsel filed an amended petition which alleged that defendant's attorney had advised him that he would receive an additional 283-day credit, even though receipt of such credit would have violated section 5-8-4 of the Uniform Code of Corrections (730 ILCS 5/5-8-4(e)(4) (2004)). This section provided that IDOC "shall treat" an offender with consecutive sentences "as though he had been committed for a single term with" credit awarded "against the aggregate *** for all time served in an institution since the commission of the offense or offenses." 730 ILCS 5/5-8-4(e)(4) (2004).

¶ 20       The amended petition observed that, after this court reduced his sentence on the murder case by 12 years, IDOC recalculated his aggregate sentence for all offenses. With respect to the recalculation, defendant submitted an affidavit, dated February 14, 2018, which averred:

"1. After my repeated request to IDOC, appellate court clerk and circuit court clerk, I later received my new calculation work sheet around June 2013;

5

2. That once I received my new calculation work sheet, I became eligible and transfer to medium security facility. That's when I notice more errors in my sentence credits;

3. Shortly after researching credit toward my sentence, I filed my petition for Post-Conviction relief on October 8, 2014."

¶ 21    A "Sentence Calculation Work Sheet," attached as an exhibit to the amended petition, is dated July 19, 2013, and it shows a credit of 1028 days.

¶ 22    Also attached is a letter, dated March 6, 2014, from defendant to the prison warden, stating that he had discovered "some errors in my calculation sheet that need to be corrected." In the letter, defendant asked for an additional credit of 283 days, pursuant to the mittimus in the aggravated battery case, which is attached to the letter.

¶ 23    The petition alleged that defendant then contacted the Cook County Public Defender, and the letter defendant received in response is attached. Although the letter itself is not dated, an attachment to the letter is dated March 26, 2014. The letter stated: "You were given 1028 days credit which includes 283 days of credit you served on both the [aggravated] battery case and the murder case. You are not entitled to an extra 238 days because you were in custody on two cases simultaneously ***." The letter further advised: "Regarding your motion to withdraw your plea[ ], the court has lost jurisdiction because you did not file a motion within thirty days after your plea."

¶ 24    In relief, the amended petition sought either permission to withdraw the plea or a reduction in sentence by 283 days. The amended petition, like the first petition, was accompanied by a verification affidavit from defendant swearing that its facts were true to the best of his knowledge.

¶ 25    In an additional affidavit, dated March 1, 2017, defendant averred that, "[o]n April 28, 2004, my appointed counsel informed me that the [S]tate agreed to [a] plea of [a] two year sentence with an additional 283 days credit from July 20, 2003[,] to April 28, 2004[,] [i]n addition to the credit on my other case." Defendant averred that he would not have pleaded guilty: "because I am innocent and was beaten badly by Cook County guards." Other than stating that he was innocent and beaten badly, the affidavit did not provide facts about either the offense or the alleged beating.

¶ 26    On May 29, 2018, the State moved to dismiss the amended petition. At the ensuing second-stage hearing held on October 17, 2018, defense counsel argued, among other things: "We are not saying that there was a bargain with the State for the credit. We are saying [defendant] was wrongly informed by his [c]ounsel." The trial court found that "the defendant concedes, as [counsel] said, this is not a benefit of the bargain argument. Rather only that trial [c]ounsel was ineffective for not telling the defendant [that] the two hundred eighty-three days in question [was] part of the one thousand twenty-eight days credit."

¶ 27    The trial court found, first, that the transcript of the plea proceeding did not support defendant's allegation that counsel had informed defendant of the credit prior to his plea. From the fact that "the trial attorney didn't even know what the total was until after the plea," the court found there was "no discussion with the defendant about the issue prior to the plea." The trial court found that defendant failed to show an error by counsel, since "[t]here was no mention of the additional days until after the plea."

¶ 28    The trial court also found that defendant could not argue actual innocence now, where the transcript showed that his plea was voluntary. During the plea hearing, defendant had explained his reason for choosing to accept the offer, namely that he lacked "the strength" to

"fight this." The trial court observed "that's his choice" but that defendant's stated reason showed that his plea was uncoerced.

¶ 29    Finally, the trial court found that defendant's postconviction claim was untimely because defendant's credit calculation "had remained unchanged since 2004." The court found that defendant "would have" had to have "received a sentence calculation sheet shortly after being received in IDOC in 2004." If that had occurred, then defendant "would have been aware" of the calculation at that time. The trial court found that defendant's petition was, therefore, "filed well past the three-year requirement[,] having [been] filed [on] November 3, 2014, ten years later."

¶ 30    For the foregoing reasons, the trial court dismissed defendant's second-stage petition on October 17, 2018. Defendant filed a timely notice of appeal on October 24, 2018, and this appeal followed.

¶ 31                                  ANALYSIS

¶ 32                            I. Postconviction Stages

¶ 33    Defendant seeks relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 34    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court

must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). In this appeal, the petition was dismissed at the second stage.

¶ 35    If a defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as factfinder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34. It is a third-stage evidentiary hearing that defendant seeks in the case at bar.

¶ 36                                II. Standard of Review

¶ 37    "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 38    Since this stage involves purely a legal determination, "[t]he inquiry [at the second stage] does not require the trial court to engage in any fact-finding or credibility determinations." (Internal quotation marks omitted.) *People v. Dupree*, 2018 IL 122307, ¶ 29. "Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35.

¶ 39    When a matter is decided without an evidentiary hearing, as it was in the case at bar, we review the trial court's decision under a *de novo* standard of review. *Dupree*, 2018 IL 122307, ¶ 29 (review of a second-stage dismissal is *de novo*); *People v. Hommerson*, 2014 IL

9

115638, ¶ 6 (review of a first-stage dismissal is also *de novo*). Under a *de novo* standard of review, the reviewing court owes no deference to the trial court's judgment or reasoning. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68. *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *Carlisle*, 2019 IL App (1st) 162259, ¶ 68. In addition, a reviewing panel, such as ourselves, may affirm on any basis found in the record. *Carlisle*, 2019 IL App (1st) 162259, ¶ 69.

¶ 40                                          III. *Strickland*

¶ 41          Defendant claims that his trial counsel was ineffective.

¶ 42          To determine whether a defendant was denied his or her right to effective assistance of counsel, Illinois courts employ the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Domagala*, 2013 IL 113688, ¶ 36. Under *Strickland*, a defendant must prove both (1) that his or her attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and (2) that, absent these errors, there is a reasonable probability that the outcome would have been different. *Domagala*, 2013 IL 113688, ¶ 36. When utilizing the *Strickland* test, "reviewing courts entertain a strong presumption that the attorney's performance was a product of sound trial strategy and professional judgment." *People v. Harris*, 206 Ill. 2d 293, 303 (2002).

¶ 43          Our supreme court has found that the *Strickland* test applies to the type of claim before us, namely, "a claim that trial counsel was ineffective during the guilty-plea process." *People v. Brown*, 2017 IL 121681, ¶ 26. However, for purposes of the second prong of the *Strickland* test, "a guilty-plea defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

¶ 44    With respect to the evidence needed to establish the reasonable probability for the second prong, our supreme court has stressed that a " 'conclusory allegation' " does not suffice in a guilty-plea case. *Brown*, 2017 IL 121681, ¶ 26 (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29). In other words, a defendant cannot simply make a bare allegation that he would not have pleaded guilty; rather, he " 'must convince the court' " that a decision by him to reject the offered plea bargain would have been " 'rational under the circumstances.' " (Internal quotation marks omitted.) *Brown*, 2017 IL 121681, ¶¶ 47-48 (quoting *Valdez*, 2016 IL 119860, ¶ 29). To make this assessment, a court "compare[s] the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea." *Brown*, 2017 IL 121681, ¶ 36.

¶ 45                                    IV. *Reed*

¶ 46    In the recent case of *People v. Reed*, 2020 IL 124940, ¶ 33, our supreme court discussed the "cost-benefit" determination faced by guilty-plea defendants, which we must assess in our *de novo* review on this appeal.

¶ 47    In *Reed*, our supreme court observed that our "plea system encourages defendants to engage in a cost-benefit assessment where *** a defendant may choose to plead guilty in hopes of a more lenient punishment" than he would otherwise receive by going to trial. *Reed*, 2020 IL 124940, ¶ 33. "As such, it is well accepted that the decision to plead guilty may be based on factors that have nothing to do with defendant's guilt." *Reed*, 2020 IL 124940, ¶ 33. "An admission of guilt *** is not guilt in fact." *Reed*, 2020 IL 124940, ¶ 38. As a result, a defendant may be allowed to "withdraw his plea based upon a misunderstanding of law" (*Reed*, 2020 IL 124940, ¶ 36) or "an actual innocence claim" in a postconviction petition" (*Reed*, 2020 IL 124940, ¶ 41). In the case at bar, defendant is alleging a misunderstanding of the law, based

upon his counsel's statement of a 283-day credit in this case and the trial court's apparent adoption of that statement, both orally at sentencing and in defendant's written sentencing order.

¶ 48                                                    V. Timeliness

¶ 49            The court below found that defendant's claim was untimely. Section 1(c) of the Act provides, in relevant part: "If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2018). Since defendant did not file a direct appeal and filed the instant petition more than three years after his 2004 guilty plea and sentencing, his petition is untimely, unless he can show a lack of "culpable negligence." 725 ILCS 5/122-1(c) (West 2018).

¶ 50            The " 'culpably negligent' standard contemplates 'something greater than ordinary negligence and is akin to recklessness.' " *People v. Johnson*, 2017 IL 120310, ¶ 26 (quoting *People v. Boclair*, 202 Ill. 2d 89, 108 (2002)). With respect to the filing deadline, our supreme court found that ignorance of it is no excuse. See *Boclair*, 202 Ill. 2d at 104-05; see also *Johnson*, 2017 IL 120310, ¶¶ 25-27 (confusion over the statute's deadline did not negate his culpability for his late filing).

¶ 51            The court below surmised that defendant must have known of the credit calculation in 2004, because he must have received a sentence calculation sheet in 2004, which must have shown that he was not receiving a separate 283-day credit. However, the record before us does not contain any sentence calculation sheets to support this finding, and prior to an evidentiary hearing, we must accept defendant's well-pleaded allegations as true.

¶ 52    The State argues that defendant was simply "indifferent" to how much time he would serve, rather than unknowing, and that his "indifference" made his petition untimely. Defendant responds that he had a reasonable belief that he had, in fact, received the credit.

¶ 53    At the plea hearing, when the court asked counsel for the sentencing credit due on this offense, counsel replied 283 days, without a single caveat or exception. No objection was voiced by the prosecutor or judge that the stated credit would not, in fact, apply against this sentence. Defense counsel, prosecutor, and judge are all people who, defendant could reasonably presume, knew the law.

¶ 54    Defendant could reasonably believe at the time of his plea that a trial court's pronouncement had the force of law, to which IDOC would be subject. His counsel's statement was entered on the sentencing order for the aggravated battery offense alone, thereby apparently confirming for defendant the erroneous advice allegedly received from counsel that this credit would be applied against this charge.

¶ 55    In *Johnson*, our supreme court found that a defendant's reliance on a fellow inmate who he knew was "not a licensed attorney" did not excuse his negligence. *Johnson*, 2017 IL 120310, ¶ 27. By contrast, in the case at bar, defendant alleges that he relied on his own counsel and the trial court.

¶ 56    If a court must assess a defendant's credibility to determine his culpable negligence, "[s]uch an assessment is not intended for a second-stage dismissal hearing" and must wait for a third-stage evidentiary hearing. *People v. Wheeler*, 392 Ill. App. 3d 303, 310 (2009).

¶ 57    Thus, we cannot find defendant's petition untimely at this stage.

¶ 58                    VI. Substantial Showing

¶ 59        Next, we turn to the two prongs of the *Strickland* ineffectiveness test, which defendant must support at this stage with a substantial showing.

¶ 60        In making this determination, we keep in mind that postconviction claims by "guilty-plea defendants require[ ] a more stringent standard" than similar claims by defendants who went to trial. *Reed*, 2020 IL 124940, ¶ 48. This is because it is not only defendants who are entitled to the benefit of the bargain, but also the State who has given up the ability to preserve its evidence in a timely fashion through the mechanism of a trial.[1] *Reed*, 2020 IL 124940, ¶ 25 (the State is "sacrificing the opportunity to present the entirety of [its] evidence"). As a result, for example, evidence in support of a guilty-plea defendant's postconviction claim of actual innocence "must be clear and convincing." *Reed*, 2020 IL 124940, ¶ 50.[2] With respect to the evidence in support of a guilty-plea defendant's claim of ineffective-assistance of counsel, the petition must provide more than conclusory or bare allegations. *Brown*, 2017 IL 121681, ¶¶ 47-48.[3]

¶ 61        In the case at bar, defendant's allegation that counsel misinformed him finds support in the record. As we noted above, when asked by the court for the credit due for this offense,

---

[1]In his special concurrence in *Reed*, Justice Michael J. Burke observed that, "by entering into a plea agreement, the State loses its opportunity to present its full case." *Reed*, 2020 IL 124940, ¶ 61 (Michael J. Burke, J., specially concurring). As a result, "[w]hen a defendant returns to court years later ***, the State is forced to muster evidence that has potentially grown stale. *Reed*, 2020 IL 124940, ¶ 61.

[2]A postconviction petition by a guilty-plea defendant asserting actual innocence requires supporting evidence that is not only (1) new and (2) material and noncumulative, but also that (3) "clearly and convincingly demonstrates that a trial would probably result in acquittal." *Reed*, 2020 IL 124940, ¶ 49. By contrast, for other petitions, the third prong requires the evidence to be "of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47.

[3]It appears that our supreme court is applying a more lenient evidentiary standard to guilty-plea defendants alleging ineffective assistance than to those alleging actual innocence. However, this is not an issue we need resolve. Even employing the more lenient standard, defendant's claim cannot succeed, for the reasons we explain in the text above.

counsel replied 283 days, without caveat or exception. In its brief to this court, the State does not argue that defendant failed to satisfy the first prong.[4]

¶ 62        The court below found that the credit could not have been part of defendant's decision to plead guilty, since his counsel did not make the exact day-of calculation until after the plea was accepted. However, whether the exact day count on the day of plea was 283 days or 282 days or 285 days does not undermine defendant's allegation that he believed that the credit would effectively efface most of his sentence and that his counsel had confirmed that it would reduce his sentence to largely time served.

¶ 63        Counsel's statement on the record of the credit for this particular offense, which was then entered on the sentencing order for the aggravated battery offense alone, constitutes more than a bare allegation in support of defendant's claim of unreasonable assistance, thereby satisfying the first prong of *Strickland* at this stage. See *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 20 ("if plea counsel gives wrong or incorrect advice" about sentencing credit, and "the defendant relies on that advice in making the decision to plead guilty, the counsel's performance falls below an objective standard of reasonableness").

¶ 64        With respect to the second or "but-for" prong of *Strickland*, defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, and he must convince the court that a decision by him to reject the offered plea bargain would have been rational under the circumstances. *Brown*, 2017 IL 121681, ¶¶ 26, 47-48.

---

[4]In its brief to this court, the State skips ahead to its prejudice arguments, stating that, "taking [defendant's claim that his counsel erroneously informed him that 283 days of presentence credit would apply against his two-year aggravated battery sentence as true," he still has not shown prejudice.

¶ 65    In the case at bar, the plea guaranteed defendant the minimum sentence. The maximum sentence was five years, and the plea guaranteed him a sentence of only two years, or less than half the maximum. Particularly in contrast to defendant's much longer 25-year sentence, the 2-year sentence appears minimal. The trial on the aggravated battery offense would have entailed a credibility contest between defendant and the victim. We do not engage in any credibility determinations here. However, we do observe that defendant does not allege any evidence or factors that would tip the scales of such a contest in his favor, and the burden is on him at the second stage to make a substantial showing. Defendant does make the bald allegation that he was "beaten badly by Cook County guards," but without alleging any details of where, when, or how, or any possible corroboration, or even how the alleged beating relates to the charged offense. Although defendant is not required to show either actual innocence or a plausible defense, he does have to convince this court that rejecting the offered plea was rational under the circumstances. *Brown*, 2017 IL 121681, ¶¶ 46-48; *Boyd*, 2018 IL App (5th) 140556, ¶ 27. Where defendant is a convicted murderer and the battery victim is a correctional officer, a plea to a guaranteed minimum sentence appears highly rational, in the absence of any other well-pleaded, countervailing facts.

¶ 66    Defendant does not allege any extrajudicial consequences, such as deportation or loss of parental rights, that could tilt the balance of this equation in favor of rejecting the plea. See *Brown*, 2017 IL 121681, ¶ 39. Thus, regarding this as strictly an analysis of the rationality of the plea itself, and without any specific allegations or attachments regarding the evidence in the aggravated battery case, we cannot find that defendant has made a substantial showing that a decision by him to reject the offered plea bargain would have been rational under the circumstances. *Brown*, 2017 IL 121681, ¶¶ 47-48.

16

¶ 67          In support, defendant cites *Boyd*, 2018 IL App (5th) 140556, ¶¶ 1, 22, in which the appellate court permitted a defendant to withdraw his guilty plea, because counsel had erroneously advised him that he was eligible for day-for-day good-time credit when, in fact, he was not eligible for that type of credit. The appellate court found it rational that the defendant *would* have rejected the plea offer but for this advice, in light of the fact that the plea offered by the State was merely at the exact "midpoint" of the sentencing range. *Boyd*, 2018 IL App (5th) 140556, ¶ 26. "[W]e find defendant has shown that a decision to reject the guilty plea would have been rational *** considering the floor of this sentencing range was 12 years less than the 18-year sentence" offered by the State. *Boyd*, 2018 IL App (5th) 140556, ¶ 29. Rejection was rational because the "defendant could have received a much lesser sentence" by rejecting it. *Boyd*, 2018 IL App (5th) 140556, ¶ 31. By contrast, in the case at bar, defendant was offered the bare minimum. Thus, we find *Boyd* distinguishable on this issue. See also *Brown*, 2017 IL 121681, ¶¶ 49-50 (the defendant failed to make a substantial showing that rejecting a plea offer would have been rational where he received an 18-year sentence and was likely to be convicted of an offense with a 45-year maximum).

¶ 68          The only way for defendant to receive less than the offered two-year sentence was to be acquitted or convicted of a lesser-included misdemeanor offense. Defendant argues that jurors may have had sympathy for him if they heard he was waiting to receive medication. However, that sympathy factor could cut either way, considering he allegedly punched the person trying to provide him the medication. Defendant also argues that jurors may have sympathized with him because he was badly beaten by the guards. However, as we observed above, defendant's petition and affidavits provide no information regarding the alleged

beating, and we are required to accept only well-pleaded allegations. *Domagala*, 2013 IL 113688, ¶ 35.

¶ 69    Defendant argues that, under *Brown*, a defendant is not required to assert actual innocence or a plausible defense, in order to prevail on a claim of ineffective assistance of plea counsel. See *Brown*, 2017 IL 121681, ¶¶ 34-36. That is true; however, "not required" does not mean irrelevant. When considering prejudice and the consequences of pleading guilty, a court may still consider the likelihood of conviction. *Brown*, 2017 IL 121681, ¶¶ 35-36. Our supreme court found that "a defendant without a viable defense" can "rarely *** establish prejudice from accepting a favorable plea deal." *Brown*, 2017 IL 121681, ¶ 35. In fact, the *Brown* court considered the likelihood of conviction in the case before it, finding that there was "little doubt that defendant would have been convicted." *Brown*, 2017 IL 121681, ¶ 49. In sum, while a claim of actual innocence or a plausible defense is not a requirement, particularly if there are other relevant consequences such as deportation, a court must still consider the likely consequences of a defendant's decision to reject the offered plea. *Brown*, 2017 IL 121681, ¶¶ 35-36.

¶ 70    For the above reasons, we do not find defendant's arguments persuasive and must reject his first claim.

¶ 71                         VII. Argument in the Alternative

¶ 72    Lastly, defendant argues that, if this court finds that defendant's postconviction claim was "not properly articulated" because of his postconviction counsel's failure to cite and apply *Brown*, then we should find that his postconviction counsel provided unreasonable assistance.

¶ 73    Defendant argues that his postconviction counsel was laboring under the misapprehension that defendant was required to assert actual innocence or a plausible defense,

18

in order to succeed on a claim of ineffective assistance of plea counsel. But see *Brown*, 2017 IL 121681, ¶¶ 34-36.

¶ 74       Although *Brown* was decided more than three months before defendant's amended petition was filed, his postconviction counsel argued in the amended petition that, "[i]n order to show prejudice [defendant] *must* claim actual innocence or a plausible defense." (Emphasis added.)

¶ 75       While this appears to be a misstatement of law to the court below, it had no effect on our *de novo* review on appeal. Thus, there is no need to remand, as defendant requests, for further second-stage proceedings.

¶ 76                               CONCLUSION

¶ 77       Since we cannot find a substantial showing of prejudice, as the *Strickland* test requires, we affirm the trial court's second-stage dismissal of defendant's postconviction petition.

¶ 78       Affirmed.

---

**No. 1-18-2392**

---

| | |
|---|---|
| **Cite as:** | *People v. Jones*, 2021 IL App (1st) 182392 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 03-CR-17114; the Hon. Michael B. McHale, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Samuel B. Steinberg, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People. |

---